UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CRIMINAL CASE NO. 05–66-KKC

UNITED STATES OF AMERICA,                          PLAINTIFF

VS.                    **REPORT AND RECOMMENDATION**

BILLY ROLAND PHILLIPS,                               DEFENDANT

*******

This matter is before the Court upon the "Motion to Suppress" (DE#10) filed by the defendant Billy R. Phillips. An evidentiary hearing was held on September 28, 2005, and a supplemental hearing was held on October 28, 2005, with the defendant personally present and represented by counsel. Having considered the record, including the Motion (DE#10), Response (DE#11), and the testimony and evidence at the hearings, the Magistrate Judge makes the following proposed findings of fact and conclusions of law:

**I. Issues Presented**

Defendant seeks suppression of the evidence, i.e. firearms and ammunition, found in his truck. The main issues before the Court are whether the initial traffic stop was lawful, and whether the subsequent search of defendant's truck by Officer Taylor violated his Fourth Amendment rights.

**II. Findings of Fact**

On May 9, 2004, Billy Phillips went to the Wal-Mart in Manchester, Kentucky, to buy some Mother's Day candy. After Phillips became angry that the type of candy he wanted was not available, a store manager called police and reported that Phillips had been "confrontational", appeared intoxicated, and was driving away in a white Doge pick-up truck. The Clay County Dispatch sent out a radio alert to be on the lookout for a white Dodge truck with an intoxicated driver. Defendant disputes whether the alert mentioned anything about an "intoxicated driver" and points to the fact that the Clay County 911 communications log refers only to a complaint about Phillips "acting up mad" at the Wal-Mart and driving a

white Dodge truck, but does not specifically refer to "intoxication". Defendant. Exh. 2, Hrg. on 9/28/05.

Vehicle Enforcement Officer Mike Taylor was on duty in Clay County and testified that he heard the radio dispatch about a white Dodge truck with an intoxicated driver. Shortly thereafter, at approximately 8:30 p.m., he observed a white Dodge truck with its lights on, driving on Highway 80 from Manchester toward London. Officer Taylor pulled in behind the truck for approximately ½ mile and testified that he saw the truck run part-way off the road on the right side. He also testified that he observed that the truck's right tail light was not operating. He signaled for the truck to pull over.

When Officer Taylor approached the driver's side of the truck, he observed an open can of Coors beer in the cup holder and smelled the strong odor of alcohol emanating from the defendant. He asked the defendant to exit the vehicle and administered a PBT field sobriety test ("portable breathalyzer"), which Phillips failed. Officer Taylor testified that Phillips' result on the breathalyzer test was .163, which is over twice the legal limit for blood alcohol.  Meanwhile, a second officer, Vehicle Enforcement Officer Landry Collett, had arrived at the scene to assist.  Phillips indicated to the officers that he had drunk five beers. Officer Collett arrested Phillips for "DUI", handcuffed him, and placed him in his cruiser.[1]

Officer Collett then wrote up the DUI citation and noted that the defendant was stopped for "no brake lamps" and had refused other field sobriety tests. See Gov. Exh. 2, Uniform Citation. Officer Taylor later testified that such notation was not complete, because he had stopped the defendant for several reasons, including the radio alert, his observation of the truck running part-way off the road, and the non-operational right tail light. Officer Taylor also indicated that defendant failed the one-leg stand test. In any event, both officers observed the open Coors beer can in the vehicle's cupholder, knew the defendant had  blown a ".163" on the breathalyzer test, and knew the defendant had admitted ingesting five beers.

After Phillips was arrested, Officer Taylor searched the interior of the truck. He found several firearms behind the passenger seat.  He also found a briefcase, opened it, and discovered another firearm inside. Officer Taylor testified that the defendant told him that he had been shot "19 times" and needed guns for his protection. Officer Taylor checked the firearms for intact serial numbers, as obliterated numbers could indicate that the firearms were stolen. The guns did not appear to be stolen. As the defendant had pulled his truck off the road into a

---

[1]Neither cruiser had operational video equipment to record the incident.

parking lot, the officers allowed him to lock the truck and leave it there.

Subsequently, Officer Todd Roberts of the Clay County Police Department asked Officer Taylor about the incident. Officer Taylor told him about the DUI and firearms. Officer Roberts informed him that Phillips was a convicted felon. As a convicted felon is generally prohibited from possessing firearms, the ATF was contacted. An ATF officer indicated that the officers should secure the white Dodge truck. Several hours later, at approximately 10:30 p.m., the defendant's truck was towed to the impound lot for the Manchester Police Department. The next morning, an ATF agent searched the truck pursuant to a search warrant, and found the firearms that Officer Taylor had described inside the truck, as well as some ammunition.[2]

## III.  Conclusions of Law

## Fourth Amendment

A person's right to be free from unreasonable searches and seizures arises from the Fourth Amendment to the United States Constitution, which specifically provides:

> "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Graham*, 275 F.3d 490, 509 (6th Cir. 2001); *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990). Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place". *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The

---

[2]Officer Taylor testified that prepared a statement regarding the incident because the ATF had been contacted. He typed his own statement and gave it to an ATF agent, possibly Agent Larry Brock. The report was also later sent by FAX from the Clay County 911 Center to the ATF.

existence of "probable cause" is determined by the totality of the circumstances. *Id*. at 238.

Although warrantless searches are generally "unreasonable" under the Fourth Amendment, *see Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *United States v. Hudson*, 405 F.3d 425, 441 (6th Cir. 2005), there are several judicially recognized exceptions, including the "search incident to an arrest", which is relevant to the present case. The burden is on the government to establish that a warrantless search falls within an exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

## Issue 1: Whether the Initial Traffic Stop of Defendant's Vehicle was Lawful

A police officer may lawfully stop a motorist if he or she has probable cause to believe the motorist has committed a traffic violation. *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000). Although the defendant suggested other possible motivations for the officer to have stopped the defendant,[3] the Supreme Court held in *Whren v. United States*, 517 U.S. 806, 813, 819, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) that, as long as an officer has probable cause to believe that a motorist has committed a traffic violation, the resulting traffic stop is generally reasonable under the Fourth Amendment, regardless of the officer's subjective intent in stopping the vehicle. See also, *United States v. Wellman*, 185 F.3d 651, 655 (6th Cir. 1999)("a traffic stop is reasonable if there was probable cause for the traffic stop, and it is irrelevant what else the officer intended to investigate at the time of the stop"); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993)(en banc), *cert. denied*, 513 U.S. 828 (1994); *United States v. Bailey*, 302 F.3d 652, 657 (6th Cir. 2002).

The defendant argues that the officer did not have probable cause to believe a traffic violation had occurred.  He points out that at the time of day of his stop (8:30 p.m.), K.R.S. 189.030 requires vehicles to use tail lights ½ hour before sunrise and ½ hour after sunset. Defendant points out that on May 9, 2004, the sun set at 19:33. Taking one hour of daylight savings time into account, the sun set

---

[3]Defendant referred to testimony from a separate case indicating that a defendant in that case, Jennings White, had allegedly placed a "hit" on Phillips, a political rival. Defendant suggests that the stop of his vehicle may have been intended to facilitate such hit. Such allegation  against the officer is speculative and unsubstantiated.

three minutes after he was stopped. Thus, the defendant argues that at the time, he was not required by state law to have his tail lights operating and should not have been stopped on such basis. Defendant also introduced a videotape at the supplemental hearing, arguing that it shows that both tail lights on the truck worked properly.   He further points out that Kentucky law only requires one rear light.  KRS 189.050(1).

Still, as Officer Taylor testified that he had observed defendant's truck with the right tail light not working, and as the hour when the defendant's vehicle would need operational tail lights was fast approaching, the officer could  reasonably stop a motorist to advise him that he had a tail light out. See *United States v. Johnson,* 242 F.3d 707, 710 (6th Cir. 2001)(holding that traffic stop for a broken tail light did not violate the Fourth Amendment)[4]; and see, *United States v. Robinson*, 78 Fed. Appx. 501, 504 (6th Cir. 2003). Although stopping a vehicle and briefly detaining the driver is considered a seizure for purposes of the Fourth Amendment, see, e.g., *United States v. Freeman,* 209 F.3d 464, 466 (6th Cir. 2000) and *United States v. Faulkner*, 133 Fed. Appx. 298, 301 (6th Cir. 2005), a brief stop on such basis would be "reasonable" under the Fourth Amendment.   See *United States v. Bradshaw*, 102 F.3d 204 (6th Cir. 1996).

Regardless of the status of defendant's tail lights, Officer Taylor had a more substantial basis for stopping defendant's truck. Officer Taylor testified that he had just heard a radio dispatch to be on the lookout for a white Dodge pick up truck with an intoxicated driver in the vicinity.  Defendant himself indicates that he believes the reason for the stop of his vehicle was this 911 radio alert. The officer then observed truck matching that description and followed it for approximately one-half mile. He testified that while following the truck, he personally observed it run "part-way" off the roadway (a violation of KRS 189.290). The police radio alert, plus the officer's personal observation, led Officer Taylor to believe that the observed motorist was driving while intoxicated. This gave the officer an adequate basis to stop the truck.  See, e.g., *Bennett v. City of Eastpointe*, 410 F.3d 810, 833 - 834 (6th Cir. 2005) (discussing reasonable suspicion for a stop).  The Fourth Amendment does not prohibit an officer from making a custodial arrest for a misdemeanor traffic violation even though it is not an arrestable offense under state law.  *United States v. Herbin*, 343 F.3d 807, 810 (6th Cir. 2003), citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001).

---

[4]The Tennessee statute in that case required a vehicle's lights to be "in good condition", which the court interpreted  "operational".

In *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that an officer may stop a defendant if he or she "reasonably suspects" the individual of criminal activity. See also, *United States v. Chapman*, 305 F.3d 530 (6ᵗʰ Cir. 2002). The Sixth Circuit Court of Appeals has explained that a traffic stop is "analogous to a *Terry* stop." *United States v. Palomino,* 100 F.3d 446, 449 (6ᵗʰ Cir. 1996); and see, *United States v. Faulkner*, 133 Fed. Appx. 298, 302 (6ᵗʰ Cir. 2005). "[A] brief investigative stop, or *Terry* stop, by an officer who is able to point to 'specific and articulable facts' justifying his or her reasonable suspicion that the suspect has been or is about to be involved in criminal activity is not an unreasonable seizure" under the Fourth Amendment. *United States v. Martin*, 289 F.3d 392, 396 (6ᵗʰ Cir. 2002), citing *United States v. Sokolow,* 490 U.S. 1, 12, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring "articulable reasons" and "a particularized and objective basis for suspecting the particular person ... of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Terry*, 392 U.S. at 19-20.

Officer Taylor reasonably suspected that the observed motorist was driving while intoxicated. See *Terry*, 392 U.S. at 19-20 (discussing requirement of officer's reasonable suspicion of criminal activity in order to "stop" an individual). This was not merely a traffic violation for which Officer Taylor could have issued a ticket, but rather, a criminal offense for which the intoxicated motorist could be arrested. Given the radio alert and his personal observation of the truck "running part-way off the roadway", Officer Taylor's initial stop of the defendant was proper under the Fourth Amendment. To the extent Officer Taylor relied in part on the radio alert, the "requirement of 'reasonable suspicion' may be satisfied by an officer's personal observations ....[and] the collective knowledge of the police." *United States v. Townsend*, 330 F.3d 438, 440 -441 (6ᵗʰ Cir. 2003), citing *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).

At the supplemental hearing, the defendant introduced a videotape of the half-mile stretch of road where the officer followed and stopped the defendant. Defendant points out that, as shown on the videotape, the road has little shoulder. Thus, a motorist whose vehicle ran "half-way" off the road would essentially land in a culvert or collide with a tree. Defendant contends that the officer's testimony is therefore not credible. The officer testified that he saw the truck run "part-way" off the road. In any event, an officer's description of erratic motion by a vehicle need not be as precise as desired by defendant. While veering exactly one-half the

width of the defendant's truck might indeed have landed him in a culvert, the officer's observation of the defendant's truck running "part-way" off the road is sufficient  to indicate erratic driving. The Magistrate Judge finds the officer's testimony to be credible and forthright. Officer Taylor had "reasonable suspicion" to stop the vehicle.

Upon stopping a motorist, the officer may not detain the motorist past completion of the purpose of the traffic stop unless something occurs during the stop that gives the officer "reasonable and articulable suspicion" that criminal activity is afoot. *United States v. Hill*, 195 F.3d 258, 264 (6ᵗʰ Cir. 1999); *Wellman*, 185 F.3d at 656 (holding that "a traffic stop is analogous to a 'Terry stop' in that, following the initial stop, the subsequent detention cannot be excessively intrusive and must be reasonably related in time to the investigation"). "A traffic stop is reasonable under the Fourth Amendment where the stop was both proper at its inception and reasonably related in scope to the circumstances that  justified the stop in the first place." *United States v. Garrido-Santana*, 360 F.3d 565, 570 (6ᵗʰ Cir. 2004); *Freeman*, 209 F.3d at 466.

Officer Taylor properly stopped defendant's vehicle and, upon approaching the driver's side, observed an open can of beer and smelled the strong odor of alcohol from inside the vehicle. This substantiated his initial suspicion that the driver was intoxicated and gave him reason to investigate further. Officer Taylor, joined by Officer Collett, administered a field sobriety test (PBT "breathalyzer") that defendant failed by a substantial margin. The officers had probable cause to arrest defendant for the criminal offense of driving his vehicle while under the influence of alcohol ("DUI").

**Issue 2: Whether, After Arresting Defendant for DUI,  the Officers Could Lawfully Search the Inside of Defendant's Truck "Incident to His Arrest"**

In *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), the United States Supreme Court held that an officer making a custodial arrest may search the person and the "area within his immediate control" for weapons which may pose a threat to police officers, without first obtaining a warrant. The Supreme Court applied this practical rule to automobile searches in *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981), holding that: "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest,

search the passenger compartment of that automobile."

Although the defendant had exited his truck at the time of his arrest, the Supreme Court has explained that "*Belton* allows police to search a car's passenger compartment incident to a lawful arrest of both 'occupants' and 'recent occupants'." *Thornton v. United States*, 541 U.S. 615, 124 S.Ct. 2127, 2128, L.Ed.2d  (2004). Defendant plainly fits such description, as he had just been stopped in his vehicle and was still in close proximity to the truck. Officer Taylor had observed an open can of beer in plain view and smelled the strong odor of alcohol. These observations, plus the fact that the defendant then failed sobriety tests and admitted to drinking five beers, provided ample probable cause for the officers to arrest defendant for driving under the influence ("DUI").

As the arrest of defendant was lawful, Officer Taylor could lawfully search the passenger area of defendant's truck "incident to his arrest".  See <u>Chimel</u>, 395 U.S. at 762-63 (holding that upon arresting a defendant, the officer may search "the area into which an arrestee might reach in order to grab a weapon or evidentiary items"); and see, e.g., *United States v. Kennedy*, 100 F.3d 957, 1996 WL 636048 at *1 (6th Cir. (Ky.))("a police officer may search the passenger compartment of a vehicle so long as an occupant of that vehicle has been arrested and the search is contemporaneous with the arrest"); *United States v. Martin*, 289 F.3d 392, 400 (6th Cir. 2002)(same).

During the initial search of the passenger area of defendant's vehicle by Officer Taylor, he opened a briefcase inside the passenger compartment of defendant's truck and found a gun inside.  The search of the briefcase was permissible under Supreme Court precedent. See *Belton*, 453 U.S. 460, 101 S.Ct. at 2864 ("when a policeman has made a lawful custodial arrest of the occupants of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the vehicle and may also examine the contents of any container found within the passenger compartment and such 'container', i.e., an object capable of holding another object, may be searched whether it is open or closed..."). Given that defendant was lawfully arrested,  the search of defendant's vehicle on December 10, 2004 by Officer Taylor was also lawful, and application of the exclusionary rule is not warranted.

Finally, it should be pointed out that although Officer Taylor did not seize the firearms during the initial search "incident to a lawful arrest", his observations of the firearms in the truck provided the basis for a subsequent search warrant obtained by an ATF agent to search defendant's truck. As the initial search by Officer Taylor was valid, there is no reason presently before this Court to suppress

any evidence obtained from the subsequent search pursuant to the search warrant. Accordingly,

## <u>RECOMMENDATION</u>

It is **RECOMMENDED** that "Motions to Suppress" (DE#10) by the defendant Billy Phillips should be **DENIED**.

By the agreement of the parties, particularized objections to this Report and Recommendation must be filed within two (2) days of the date of service of the same or further appeal is waived. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *affirmed*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. See *Howard v. Secretary of Health and Human Services*, 932 F.2d 505 (6th Cir. 1991). Also by the agreement of the parties, a party may file a response to another party's objections within two (2) days after being served with a copy thereof. Rule 72(b), Fed. R.Civ.P.

This the 1st day of November, 2005.

Signed By:

*J.B. Johnson, Jr.*

United States Magistrate Judge